IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BEVERLY KENNEDY, <br> AMERICAN DELTA PARTY, <br> and ROQUE DE LA FUENTE, <br><br> Plaintiffs, <br><br> v. <br><br> CARLOS CASCOS, in his official capacity <br> as TEXAS SECRETARY OF STATE, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | 1:16-CV-1047-RP |

**ORDER**

      Before the Court in the above-styled matter is the motion of Plaintiffs Beverly Kennedy, the American Delta Party, and Roque De La Fuente ("Plaintiffs") for a preliminary injunction. (Dkt. 3). By way of their motion, Plaintiffs seek an order from this Court requiring the State of Texas to add De La Fuente to the November ballot as an independent candidate for President of the United States, or in the alternative, to add his name to the State's list of write-in candidates.

      The Court held a hearing on Plaintiffs' motion on September 28, 2016. At the conclusion of the hearing, the Court orally denied the motion, finding that Plaintiffs had not demonstrated a likelihood of success on the merits. The order that follows memorializes that denial.

**BACKGROUND**

1.     **The Parties**

      Plaintiff De La Fuente is a candidate for the 2016 presidential election in many states throughout the country. He sought the nomination of the Democratic Party and ultimately finished third, behind Hillary Clinton and Bernie Sanders. Notwithstanding his unsuccessful primary candidacy, he persists in seeking a place on the November ballot nationwide. He will appear on the

ballot in five states as the candidate for American Delta Party, in two states as the candidate for the Reform Party, and as an independent candidate in eleven other states.

Plaintiff Beverly Kennedy is a voter in Texas. She avers that she wishes to vote for De La Fuente in the upcoming presidential election. Plaintiff American Delta Party is a political party that has nominated De La Fuente as its candidate for President. At the hearing, counsel for Plaintiffs informed the Court that it would dismiss the American Delta Party from the case, agreeing with the State that the party lacked standing to assert claims in this matter.

Defendant Carlos Cascos is sued in his official capacity as the Secretary of State for the State of Texas. He is responsible for the enforcement of the State's election laws at issue in this case.

**2.      The Statutory Scheme**

Texas law requires independent candidates to submit an application for ballot access, supported by a petition signed by a number of registered voters totaling one percent of the votes cast in the previous presidential election (nearly 80,000). Tex. Elec. Code § 192.032. In order to be valid, the signatures must be obtained after the Texas presidential primaries conclude and submitted before the second Monday in May, approximately six months before the general election in early November. Only voters who did not participate in the primary may validly sign the petition. *Id.*

The process for becoming a write-in candidate is simpler. The candidate need only submit an application seventy-eight days before the election. *Id.* §§ 146.025(a), 192.036(a). The application must provide certain information about the candidate and include signed statements from the vice-presidential candidate and the candidate's nominated electors indicating their consent to nomination. *Id.* §§ 192.036(b), 192.032(b). The State then maintains a list of eligible write-in candidates and will count votes only for those candidates appearing on the list. *Id.* § 146.031. A write-in candidate is not required to submit a petition with voter signatures. *Id.* § 192.036(b).

Texas also has at least two "sore loser" statutes. One statute in Title 11 of the Election Code, which concerns presidential candidates, states that an individual who participated in a party primary "is ineligible to be an independent candidate for president or vice-president of the United States in the succeeding general election." *Id.* § 192.032. Section 162.015, found in Title 10, which concerns political parties, has broader language. It states that individuals who participate in a party primary, either as a voter or candidate, may not thereafter appear on the ballot as an independent candidate *or* a candidate for another party. *Id.* § 162.015(a). It also makes the participant ineligible for placement on the list of write-in candidates. *Id.* § 162.015(b).

### 3.    The Problem

After his unsuccessful bid to be the presidential nominee for the Democratic Party, Plaintiff De La Fuente continued his efforts to access the ballot throughout the United States. His efforts have been successful in other states, but he has not yet secured a place on the Texas ballot.

It is not at all clear from the record what attempts De La Fuente has made to appear on the ballot, except competing in the State's primary election. His affidavit avers that the "great difficulty" the Texas laws impose impeded his ability to "marshal [his] resources" to achieve ballot access. (De La Fuente Aff., Dkt. 3-3, at 2). He alleges that he would have needed to obtain about 160,000 raw signatures in order to get the 80,000 valid signatures needed. (*Id.*).[1] He further alleges that he had to rely on paid petition circulators to get the signatures he needed to access "various state ballots." (*Id.*). At the hearing on Plaintiffs' motion, counsel for Plaintiffs informed the Court that he had no evidence that Plaintiffs sought to obtain signatures from qualified voters by the deadline for submitting a compliant application and petition to the State. Rather, counsel hypothesized that Plaintiffs may have been deterred from attempting to do so by the "discouraging" Texas requirements.

---

[1] De La Fuente provides no explanation for how he arrived at this estimation.

Although De La Fuente does not allege that he attempted to comply with the ballot access laws, he does contend that he submitted a timely and compliant application for write-in candidacy. Nonetheless, the Texas Director of Elections informed De La Fuente that he would not appear on the list of eligible write-in candidates because he had previously participated in the Democratic primary.

Plaintiffs filed their Complaint on September 8, 2016, and immediately sought emergency injunctive relief. (Dkts. 1, 3).

## LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, and the decision to grant a preliminary injunction is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief must "carr[y] the burden of persuasion on all four requirements." *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

## DISCUSSION

Plaintiffs' burden is particularly demanding in this case. Not only must they convince the Court that they are entitled to the "extraordinary remedy" of injunctive relief, *see Valley*, 118 F.3d at 1050, but they must do so in the face of authority in this district that upholds the provisions they challenge. For the reasons that follow, the Court finds that Plaintiffs have not carried this burden because they have not established that they are likely to prevail on the merits.

The State argues that Texas's "sore loser" statute permissibly bars De La Fuente from appearing on the November ballot as an independent and prevents his inclusion on the list of write-

in candidates. That being the case, the State asserts, Plaintiffs' remaining arguments regarding ballot access and write-in requirements are irrelevant. At the hearing, Plaintiffs' counsel conceded that the "sore loser" statute would be dispositive of Plaintiffs' as-applied claims if this Court were to find the statute valid and applicable.

The Supreme Court has previously upheld "sore loser" statutes as a valid exercise of state power to regulate elections. In *Storer v. Brown*, 415 U.S. 724 (1974), the Court upheld a California statute that denied individuals access to the ballot as independent candidates if they had been affiliated with a political party within a year preceding the primary election. 415 U.S. at 726. The Court pointed to a litany of important state interests that justified the provision, including protecting the integrity of its political processes from frivolous candidacies, winnowing out candidates, reserving the general election for major struggles rather than intraparty feuds, preventing "independent candidacies prompted by short-range political goals, pique, or personal quarrel," as well as preventing "splintered parties and unrestrained political factionalism [that] may do significant damage to the fabric of government." *Id.* at 732–35.

Plaintiffs distinguish *Storer* by pointing out that it concerned California's application of the "sore loser" statute to candidates for Congress, not presidential candidates. According to Plaintiffs, the Court's decision in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), demonstrates the importance of that distinction. In *Anderson*, the Court struck down an Ohio statute that imposed a March deadline for filing an application to run as an independent candidate for President. 460 U.S. at 784. The Court found that the early deadline imposed a substantial and discriminatory burden on the rights of independent-minded voters and independent candidates. *Id.* at 792–95. As for the countervailing state interest, the Court noted that the states have "less important" interests in regulating presidential elections "because the outcome of the election will largely be determined by voters

5

beyond the State's boundaries." *Id.* at 795. The Court thus found the restrictions to be insufficiently justified. *Id.* at 805–06.

To say that the states have a "less important" interest is not to say they have no interest at all in regulating presidential elections. *See id.* at 784. Indeed, *Anderson* recognized that states have important and legitimate interests in voter education and the prevention of excessive factionalism, though they may be less able to advance them in the context of a national election. *Id.* at 796–98, 801–05. That said, the important interests that justified the "reasonable, non-discriminatory" restrictions in *Storer* failed to justify the restrictions in *Anderson*, which the Court found to discriminate against independents. *See id.* at 804.

The constitutionality of "sore loser" statutes as applied to presidential candidates was addressed in this district in *National Committee of U.S. Taxpayers Party v. Garza*, 924 F. Supp. 71 (W.D. Tex. 1996). In that case, the U.S. Taxpayers Party sought to place Pat Buchanan on the ballot as its presidential nominee. *Id.* at 72. However, the State of Texas would not permit Buchanan to appear on the ballot because he had previously sought the Republican Party's nomination. *Id.* at 72–73. Section 162.015(a)(2), the "sore loser" statute, made him ineligible to appear on the ballot as the Taxpayers Party nominee. *Id.* Using the *Anderson/Burdick* framework,[2] *Garza* found that the "sore loser" statute did not discriminate against independent candidates and imposed only a minimal burden on Plaintiffs that the State's interests sufficiently outweighed. *Id.* at 74–75. This Court recognizes the lack of binding authority clearly delineating the limit of the State's power to apply its

---

[2] In *Anderson*, the Supreme Court instructed lower courts to evaluate election laws by considering the "character and magnitude of the asserted injury" to the plaintiff's asserted rights, and then weighing the injury against the interest put forward by the state. 460 U.S. at 788. In *Burdick v. Takushi*, 504 U.S. 428 (1992), the Court clarified that, where state regulation imposes severe restrictions on the rights of voters, the regulation must be narrowly drawn to advance a compelling government interest. 504 U.S. at 434. However, where the restrictions are reasonable and nondiscriminatory, the state's important regulatory interests usually suffice to justify the restrictions. *Id.*

"sore loser" statute to presidential candidates, but it is sufficient at this juncture to note that Plaintiffs have not convinced the Court that *Garza* was wrongly decided.

Plaintiffs resist the application of section 162.015 on several other grounds. First, they argue that the "sore loser" statute should not apply to presidential candidates because the presidential electors, rather than the named candidates, are "the true candidates in November." (Winger Aff., Dkt. 3-2, at 4). Perhaps ironically, the four-justice dissent in *Anderson* forcefully advanced this same argument *in favor of* broader state authority to regulate presidential elections. *See* 460 U.S. at 815 ("While Ohio may have a lesser interest in who is ultimately selected by the Electoral College, its interest in who is supported by its own Presidential electors must be at least as strong as its interest in electing other representatives."). Whatever bearing it may have here, the argument does not aid the Plaintiffs.

Second, Plaintiffs argue that the "sore loser" statute "violates the rule laid down in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) [that] states cannot add requirements for [f]ederal elective office candidates that are not in the U.S. Constitution." (Pl.'s Emergency Mot. for Prelim. Inj., Dkt. 3, at 5). But *U.S. Term Limits* itself unambiguously rejected the argument that "sore loser" statutes of the kind examined in *Storer* created additional qualifications. *Id.* at 828.

Finally, Plaintiffs argue that even if Texas's "sore loser" laws prevent De La Fuente from appearing on the ballot as an independent candidate, they do not bar him from being added to the list of write-in candidates. Section 162.015 of the Texas Election Code states that individuals who compete in party primaries may not appear as an independent candidate on the subsequent ballot and are also ineligible for inclusion on the list of write-in candidates "for the succeeding general election for state and county officers." Tex. Elec. Code § 162.015(b). However, section 192.032, which deals specifically with presidential elections, states only that "[a] candidate in a presidential primary election is ineligible to be an independent candidate for president . . . in the succeeding

7

general election." *Id.* § 192.032(h). Plaintiffs argue that section 192.032 supersedes section 162.015 and does not apply to write-in candidates, who are not mentioned and are presumably excluded from the scope of its restrictions.

Plaintiffs have overlooked two other statutes that bear on their argument. First, section 1.003(b) of the Election Code states that "[i]f the substance of [a] superseding provision, together with any related provisions, and the substance of the referenced provision can each be applied to the same subject or set of circumstances, both provisions shall be given effect." Tex. Elec. Code § 1.003(b). Concededly, this provision applies "[w]hen a provision of [the Election Code] provides that it supersedes another specifically referenced provision," which section 192.032 does not. *Id.* However, this Court is of the view that section 1.003(b) reflects a policy that the entire Election Code should be given effect in the absence of a direct conflict, regardless of whether one statute supersedes another expressly rather than impliedly. Sections 162.015 and 192.032 therefore should be read together to the extent possible.

Second, the Election Code's definitions statute reveals no conflict between sections 162.015 and 192.032. *See* Tex. Elec. Code § 1.005. Section 1.005 defines the "general election for state and county officers" as "the general election at which officers of the federal, state, and county governments are elected." *Id.* § 1.005(7). Since the President is an officer of the federal government, section 162.015 applies by its terms to presidential elections. Section 1.005 also defines "independent candidate" as any "candidate . . . who is not the nominee of a political party." *Id.* § 1.005(9). It does not differentiate between those independent candidates who appear on the ballot and those who are write-ins. *See id.* Similarly, section 192.032 broadly states that primary candidates are ineligible to be independent candidates in the succeeding general election, without excepting from its scope those candidates on the write-in list "who [are] not the nominee[s] of a political party." *Id.* §§ 192.032, 1.005(9). It is therefore of no consequence which of Texas's "sore loser" statutes the Court applies.

8

If they are valid, either would preclude De La Fuente's candidacy, whether on the ballot or the write-in list.

The State has made a strong showing that the "sore loser" laws are indeed valid. The authority discussed above raises significant doubt as to whether Plaintiffs are likely to succeed on the merits. If, as Plaintiffs concede, the "sore loser" statutes are properly applied in this case, that would be dispositive of their as-applied claims. Though they argue that their facial challenges would survive, a substantial question remains as to whether Plaintiffs would have standing to pursue them. Accordingly, the Court finds that Plaintiffs have not sufficiently carried their burden of showing a substantial likelihood of success on the merits so as to justify the "extraordinary remedy" of preliminary injunctive relief. *See Valley*, 118 F.3d at 1050. Since this factor has not been satisfied, the Court does not address whether Plaintiffs have met the others. *See PCI Transp. Inc.*, 418 F.3d at 545 (holding that the party seeking injunctive relief must carry the burden of persuasion on all four requirements).

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Plaintiffs' Emergency Motion for Preliminary Injunction. (Dkt. 3).

**SIGNED** on October 4, 2016.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE