IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BEVERLY KENNEDY, <br> AMERICAN DELTA PARTY, <br> and ROQUE DE LA FUENTE, <br><br> Plaintiffs, <br><br> v. <br><br> ROLANDO PABLOS, in his official capacity <br> as TEXAS SECRETARY OF STATE, <br><br> Defendant. | § § § § § § § § § § § § § | 1:16-CV-1047-RP |

## ORDER

Before the Court in the above-styled matter is Defendant Rolando Pablos's Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 3). Also pending before the Court is the motion of Plaintiffs Beverly Kennedy and Roque De La Fuente for leave to file an amended complaint. (Dkt. 26). Having reviewed the parties' submissions and the applicable law, the Court issues the following order.

### BACKGROUND

**1.    The Parties**

Plaintiff De La Fuente was a candidate for the 2016 presidential election in many states throughout the country. He sought the nomination of the Democratic Party and ultimately finished third, behind Hillary Clinton and Bernie Sanders. Notwithstanding his unsuccessful primary candidacy, he persisted in seeking a place on the November ballot nationwide. He appeared on the ballot in five states as the candidate for American Delta Party, in two states as the candidate for the Reform Party, and as an independent candidate in eleven other states.

1

Plaintiff Beverly Kennedy is a voter in Texas. She alleges that she wishes to vote for De La Fuente in the upcoming presidential election. Plaintiff American Delta Party is a political party that has nominated De La Fuente as its candidate for President. At a hearing on Plaintiffs' application for a preliminary injunction, counsel for Plaintiffs informed the Court that it would dismiss the party from the case, agreeing with the State that the Party lacked standing to assert claims in this matter.

Defendant Rolando Pablos is sued in his official capacity as the Secretary of State for the State of Texas. He is responsible for the enforcement of the State's election laws at issue in this case.

**2.  The Statutory Scheme**

Texas law requires independent candidates to submit an application for ballot access, supported by a petition signed by a number of registered voters totaling one percent of the votes cast in the previous presidential election (nearly 80,000 for the 2016 presidential election). Tex. Elec. Code § 192.032. In order to be valid, the signatures must be obtained after the Texas presidential primaries conclude and submitted before the second Monday in May. Only voters who did not participate in the primary may validly sign the petition. *Id.*

The process for becoming a write-in candidate is simpler. The candidate need only submit an application seventy-eight days before the election. *Id.* §§ 146.025(a), 192.036(a). The application must provide certain information about the candidate and include signed statements from the vice-presidential candidate and the candidate's nominated electors indicating their consent to nomination. *Id.* § 192.036(b), 192.032(b). The State then maintains a list of eligible write-in candidates, and will count votes only for those candidates appearing on the list. *Id.* § 146.031. A write-in candidate is not required to submit a petition with voter signatures. *Id.* § 192.036(b).

Texas also has at least two "sore loser" statutes. One statute in Title 11 of the Election Code, which concerns presidential candidates, states that an individual who participated in a party primary "is ineligible to be an independent candidate for president or vice-president of the United States in

the succeeding general election." *Id.* § 192.032. Section 162.015, found in Title 10, which concerns political parties, has broader language. It states that individuals who participate in a party primary, either as a voter or candidate, may not thereafter appear on the ballot as an independent candidate *or* a candidate for another party. It also makes the participant ineligible for placement on the list of write-in candidates. *Id.* § 162.015(b).

3.   **The Problem**

After his unsuccessful bid to be the presidential nominee for the Democratic Party, Plaintiff De La Fuente continued his efforts to access the ballot throughout the United States. His efforts were successful in several states, but he did not secure a place on the Texas ballot.

It is not at all clear from the record what attempts De La Fuente made to appear on the ballot, except competing in the State's primary election. His affidavit avers that the "great difficulty" that the Texas laws impose impeded his ability to "marshal [his] resources" to achieve ballot access. He alleges that he would have needed to obtain about 160,000 raw signatures in order to get the 80,000 valid signatures needed.[1] He further alleges that he had to rely on paid petition circulators to get the signatures he needed to access "various state ballots."

Although De La Fuente does not allege that he attempted to comply with the ballot access laws, he contends that he submitted a timely and compliant application for write-in candidacy. Nonetheless, the Texas Director of Elections informed De La Fuente that he would not appear on the list of eligible write-in candidates because he had previously participated in the Democratic primary.

Plaintiffs filed their Complaint on September 8, 2016, and immediately sought emergency injunctive relief. (Dkts. 1, 3). The Court denied Plaintiffs' request for a preliminary injunction, which foreclosed De La Fuente's opportunity to appear on the Texas ballot in the November election.

---

[1] He provides no explanation for how he arrived at this estimation.

Now that the election has passed, Plaintiffs seek to amend their complaint. The amended complaint adds allegations concerning De La Fuente's intent to run for president in the 2020 election and fleshes out some previously raised legal arguments.

## LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Throughout this process, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference,

4

and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

## DISCUSSION

At the outset, the Court notes that the passage of the election does not moot Plaintiffs' claims concerning to constitutionality of the Texas statutes outlines above. *See Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661–62 (5th Cir. 2006) (noting that "[c]ontroversy surrounding elections laws . . . is one of the paradigmatic circumstances" falling within an exception to the mootness doctrine). The Court will first analyze the application of the Texas election laws to De La Fuente's 2016 candidacy before turning to whether the amendment of Plaintiffs' Complaint to include allegations concerning the 2020 election would be futile.

**1.    Plaintiffs' 2016 Claims**

In denying Plaintiffs' application for a preliminary injunction, this Court expressed doubt that Plaintiffs could successfully show that Texas's sore loser statutes unconstitutionally excluded De La Fuente from the ballot. As Plaintiffs note, the Court did not at that time definitively rule that the statutes passed constitutional muster. For the reasons that follow, however, the Court finds that the statutes are facially constitutional and that Plaintiffs have alleged no facts that, when taken as true, plausibly show that the statutes are unconstitutional as applied.

**A.    *Anderson/Burdick* Framework**

Courts evaluating the constitutionality of election laws employ the test announced by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), as that test was refined in *Burdick v. Takushi*, 504 U.S. 428 (1992).

In *Anderson*, the Supreme Court instructed lower courts to evaluate elections laws by considering the "character and magnitude of the asserted injury" posed by the statutes to the plaintiff's asserted rights, and then weighing that against the interest put forward by the state. 460

5

U.S. at 788. In *Burdick*, the Court clarified that, where state regulation imposes severe restrictions on the rights of voters, the regulation must be narrowly drawn to advance a compelling government interest. 504 U.S. at 434. However, where the restrictions are reasonable and nondiscriminatory, the State's important regulatory interests usually suffice to justify the restrictions. *Id.*

**B.     Sore Loser Statutes**

The Supreme Court has previously upheld "sore loser" statutes as a valid exercise of state power to regulate elections. In *Storer v. Brown*, 415 U.S. 724 (1974), the Court upheld a California statute that denied individuals access to the ballot as an independent candidate if they had been affiliated with a political party within a year preceding the primary election. 415 U.S. at 726. The Court pointed to a litany of important state interests that justified the provision, including protecting the integrity of its political processes from frivolous candidacies, winnowing out candidates, reserving the general election for major struggles rather than intraparty feuds, preventing "independent candidacies prompted by short-range political goals, pique, or personal quarrel," as well as preventing "splintered parties and unrestrained political factionalism [that] may do significant damage to the fabric of government." *Id.* at 732–35.

Plaintiffs point out that *Storer* concerned California's application of the "sore loser" statute to candidates for Congress, not presidential candidates. According to Plaintiffs, the Court's decision in *Anderson* demonstrates the importance of that distinction. In *Anderson*, the Court struck down an Ohio statute that imposed a March deadline for filing an application to run as an independent candidate for president. 460 U.S. at 784. The Court found that the early deadline imposed a substantial and discriminatory burden on the rights of independent-minded voters and independent candidates. *Id.* at 792–95. As for the countervailing state interest, the Court noted that the states have "less important" interests in regulating presidential elections "because the outcome of the

6

election will largely be determined by voters beyond the State's boundaries." *Id.* at 795. The Court thus found the restrictions to be insufficiently justified. *Id.* at 805–06.

Though the Supreme Court has not evaluated the constitutionality sore loser statutes as applied to presidential candidates, the issue has been addressed in this district in *National Committee of U.S. Taxpayers Party v. Garza*, 924 F. Supp. 71 (W.D. Tex. 1996). In that case, the U.S. Taxpayers Party had sought to place Pat Buchanan on the ballot as its presidential nominee. *Id.* at 72. However, the State would not permit Buchanan to appear on the ballot because he had previously sought the Republican Party's nomination. *Id.* at 72–73. Section 162.015(a)(2), the sore loser statute, made him ineligible to appear on the ballot as the Taxpayers Party nominee. *Id.* Using the *Anderson/Burdick* framework, *Garza* found that the "sore loser" statute did not discriminate against independent candidates and imposed a minimal burden on Plaintiffs rights that the State's interest sufficiently outweighed. *Id.* at 74–75.

Plaintiffs disagree with *Garza*. They argue that the state has a reduced interested in regulating presidential elections and thus cannot justify applying the sore loser statute to presidential candidates. To say that the states have a "less important" interest, however, is not to say they have no interest at all in regulating presidential elections. *See Anderson*, 460 U.S. at 784. Indeed, *Anderson* recognized that states have important and legitimate interests in voter education and the prevention of excessive factionalism, though they may be less able to advance them in the context of a national election. *Id.* at 796–98, 801–05. But these important interests that justified the "reasonable, non-discriminatory" restrictions in *Storer* simply failed to justify the restrictions that *Anderson* found to discriminate against independents in order to protect the duopoly of the Republican and Democratic

parties. *See id.* There is no indication that Texas's sore loser statutes discriminate against independent candidates as did the statutes in *Anderson*.[2]

Additionally, the Texas statutes are less restrictive than those upheld in *Storer* and thus may be justified by less weighty state interests. The California statute in *Storer* barred independent candidates from appearing on the ballot if they either voted in the immediately preceding primary or had any affiliation with a political party at any point in the year preceding the primary. *Storer*, 415 U.S. at 726. Here, sections 192.032 and 162.015 deny a position on the ballot to an independent candidate only if he or she appears as a candidate in a primary election for a political parties' nomination for the same office. Tex. Elec. Code §§ 192.032, 162.015. Thus, the Texas statutes, unlike those upheld in *Storer*, allow prospective independent candidates to associate with political parties within the year preceding the election. It also appears that the Texas laws, unlike those in *Storer*, allow independent candidates to vote in party primaries. *See id.* Section 162.015 states that primary voters cannot be the "nominee of a political party other than the party holding the primary in which [they] voted . . . ." *Id.* § 162.015(a)(2). Since independent candidates are by definition not nominees of political parties, section 162.015(a)(2) does not, by its terms, bar independent candidacies of primary voters. As Texas's sore loser statutes are less restrictive than those in *Storer*, the State's reduced interests in regulating presidential elections may, as *Garza* found, nonetheless justify the burdens. *Libertarian Party of Michigan v. Johnson*, 905 F. Supp. 2d 751 (E.D. Mich. 2012) ("[*S*]*torer* offers significant support for a finding that the less-restrictive Michigan sore loser statute passes constitutional muster [when applied to presidential candidates].")

---

[2] Plaintiffs allege that the laws require individuals to decide "unduly early" whether to run as independent candidates, presumably as opposed to partisan nominees. (Compl., Dkt. 1, ¶ 10). However, the decision must be made at the same time for all candidates, specifically, on the date candidates must submit applications for a place on the primary ballot. *See* Tex. Elec. Code § 172.023. After the one-day withdrawal period, those participating as primary candidates face restrictions of the sore loser laws. *See id.* §§ 172.052(a); 162.015(a).

8

This Court agrees with *Garza* that Texas's sore loser statutes are constitutionally sound. First, they are a "minimal burden" on the First and Fourteenth Amendment rights of candidates. *See Garza*, 324 F. Supp. at 75. At most, they simply require a candidate to decide whether he or she will seek the nomination of a party and to abide by that choice for the duration of the election cycle. *See id.* ("Texas is not denying an otherwise-qualified candidate the opportunity to run for President, but rather allowing each candidate only one bite at the apple."); *De La Fuente v. Merrill*, __ F. Supp. 3d __, 2016 WL 5886885, at *11 (M.D. Ala. Oct. 7, 2016) ("It cannot be over-emphasized that Mr. De La Fuente is only barred from the ballot because of his voluntary participation in the Democratic Primary."). It also presents a minimal burden on voters. As the sore loser statutes apply only to those candidates that have participated in a party primary, voters will have had an opportunity to support their chosen candidate in that primary. At the general election stage, the statutes remove from the voters' range of options only those candidates who have tried unsuccessfully to secure a party's nomination in the same election cycle.

Second, the State has identified several legitimate and important interests justifying the statutes. The State points out that the statutes ensure an orderly electoral process, protect the integrity of the electoral system, narrow focus onto policy disputes rather than intraparty feuds, andprevent voter confusion. (Def.'s Mot. Dismiss, Dkt. 16, at 9). Each of these interests finds support in Supreme Court precedent. *See Rosario v. Rockefeller*, 410 U.S. 752, 761 (1973) ("It is clear that preservation of the integrity of the electoral process is a legitimate and valid state goal."); *Storer*, 415 U.S. at 735–36 (finding it an "acceptable goal[]" to reserve the general election ballot for "major struggles" rather than "continuing intraparty feuds"); *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) ("There is surely an important state interest in . . . avoiding confusion, deception, and even frustration of the democratic process at the general election."); *Am. Party of Tex. v. White*, 415 U.S. 767, 782 n.14 (1974) (finding that the preventing voter confusion is a compelling interest).

Additionally, the interests have been found to be relevant to and advanced by sore loser statutes. *See Garza*, 624 F. Supp. at 74–75; *Johnson*, 905 F. Supp. 2d at 751 ("This Court similarly concludes that the Michigan sore loser statute . . . is a reasonable, nondiscriminatory restriction justified by Michigan's important regulatory interests of preventing extended intra party feuding, factionalism and voter confusion.").

On balance, the Court concludes that the State's important interests sufficiently justify the slight, non-discriminatory burden on Plaintiffs. *See Burdick*, 504 U.S. at 439 ("Because we have already concluded that the burden is slight, the State need not establish a compelling interest to tip the constitutional scales in its direction."). The statutes therefore withstand scrutiny under the *Anderson/Burdick* framework. Additionally, Plaintiffs have alleged no facts that, when taken as true, demonstrate that the statutes are unconstitutional as applied to De La Fuente's candidacy even if they are otherwise facially valid. Indeed, De La Fuente essentially alleges only that he unsuccessfully sought the Democratic nomination and that the State applied the statute to deny him a place as an on the ballot or as a write-in candidate. Having concluded that the State may validly do so, Plaintiffs have detailed nothing more than the permissible operation of the laws. The Court therefore finds that Plaintiffs' facial and as-applied challenges to the sore loser statutes fail to state claims upon which relief may be granted.[3]

### C. Plaintiffs' Remaining Claims

This Court's finding that Texas's sore loser statutes are constitutional makes in unnecessary to consider Plaintiffs' challenges to the Election Code's signature and deadline requirements for independent candidates. Because the sore loser laws validly barred De La Fuente from the ballot,

---

[3] Plaintiffs have reasserted certain other arguments against the application of the sore loser statutes. In particular, Plaintiffs argue that the sore loser statutes create unconstitutional requirements for the office of the president and should not otherwise be applied to presidential candidates because the electors are the true candidates in the general election. The Court rejected these arguments in its order denying Plaintiffs' application for a preliminary injunction and does not address them here. *See Kennedy v. Cascos*, __ F. Supp. 3d __, 2016 WL 5794798, at *4 (W.D. Tex. Oct. 4, 2016).

Plaintiffs lack standing to pursue those claims. *See Storer*, 415 U.S. at 737 ("[I]f a candidate is absolutely and validly barred from the ballot by one provision of the laws, he cannot challenge other provisions as applied to other candidates. . . . The disaffiliation requirement . . . is an absolute bar, and a valid one."). The Court will therefore grant Defendants' motion to dismiss these other claims.[4]

## 2. Plaintiffs' Motion for Leave to File Amended Complaint

Plaintiffs move the Court for leave to file an amended complaint. Plaintiffs' proposed amendments are minor. Most notably among the changes, Plaintiffs wish to add allegations that De La Fuente wishes to run for president in the 2020 election year and "wishes to preserve his ballot access options" for that year. (Proposed Am. Compl., Dkt. 26-1, ¶ 1). Plaintiffs also seek to add a challenge to section 162.015 of the Texas Election Code, which was not expressly challenged in Plaintiffs' original complaint. Defendant opposes Plaintiffs' motion on the ground that the proposed amendments are futile.

Federal Rule of Civil Procedure 15 instructs courts to grant leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a). The language thus "evinces a bias in favor of granting leave to amend." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)). "A district court must possess a 'substantial reason' to deny a request for leave to amend." *Id.* "However, leave to amend is by no means automatic." *Halbert v. City of Sherman*, 33 F.3d 526, 539 (5th Cir. 1994). The court may consider a variety of factors that counsel against granting leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th

---

[4] The sole allegation relevant exclusively to Plaintiff Kennedy is that she wishes to vote for De La Fuente. (Compl., Dkt. 1, ¶ 2). The balance of the Complaint and all briefing in this matter concerns De La Fuente's candidacy without identifying any injury peculiar to Kennedy. The Court is therefore of the view the Kennedy's claims rise and fall with De La Fuente's.

Cir. 2005). When amendment is challenged as futile, the court employs the standard used for reviewing a dismissal under Rule 12(b)(6). *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014). Leave to amend may be denied "if the complaint as amended would be subject to dismissal." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009).

The State argues that Plaintiffs' proposed amendment would be futile because section 162.015 is constitutional for the same reasons as section 192.032(h), and because Plaintiffs lack standing to pursue claims for the 2020 election. As discussed above, the Court finds section 162.015 to be constitutional, and thus Plaintiffs' challenge to this statute would be subject to dismissal on the facts alleged in their amended complaint. *See Ackerson*, 589 F.3d at 208. For the reasons that follow, the Court agrees that the facts alleged in Plaintiffs' amended complaint do not fulfill the standing requirement of Article III, making the complaint as a whole subject to dismissal for want of jurisdiction. *See id.*

In order to properly invoke the jurisdiction of the federal courts, a plaintiff must establish that he has standing to sue. *McCardell v. U.S. Dep't of Housing & Urban Dev.*, 794 F.3d 510, 516–17 (5th Cir. 2015). A plaintiff establishes standing under Article III by demonstrating an injury that is: (1) concrete, particularized, and actual or imminent (so-called injury 'in fact'); (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling." *Id.*

The State challenges Plaintiffs' allegations with respect to the first element—injury in fact. The bulk of Plaintiffs' allegations concerning to the 2020 election are as follows:

> Plaintiff De La Fuente will be a candidate for President in 2020, and desires to begin campaigning for President as soon as possible after the 2016 general election. Because he wants to preserve his ballot access options for 2020, and because the requirements to appear on the ballot as an independent candidate in Texas are extraordinarily difficult . . . he must begin petitioning as an independent candidate as soon as possible after November 8, 2016 to be successful. Furthermore, he might again seek the nomination of the Democratic Party. . . . Plaintiff Kennedy desires to associate with candidate De La Fuente's 2020 candidacy.

(Proposed Am. Compl., Dkt. 26-1, ¶¶ 1–2). Nearly all other references to the 2020 election occur in the context of legal argument, not factual allegations. (*See id.* ¶¶ 6–7, 27, 29). These allegations, according to the State, present only a hypothetical and speculative injury, which is insufficient to support standing. (Def.'s Resp. to Mot. for Leave, Dkt. 28, at 5).

The Court agrees with the State that Plaintiffs' amended complaint does not allege a concrete and particularized injury. De La Fuente has not committed to any particular course of conduct with respect to his candidacy, alleging only that he "might" seek the Democratic Party's nomination. (Proposed Am. Compl., Dkt. 26-1, ¶ 1). But whether he does or does not seek that nomination is critical to the issue of standing. As the State points out, if De La Fuente successfully secures the nomination, he will not have standing to challenge any of the election laws because he will have suffered no injury from either the sore loser statutes or the legal regime controlling ballot access for independent candidates. If he fails in the primary, his candidacy will be validly barred by the sore loser statutes and, just as the Court has concluded above, he will lack standing to challenge other statutes. Finally, if he does not participate in a party primary, he will not have been injured by the sore loser laws and will therefore be unable to challenge them. Any one of these scenarios is possible in light of Plaintiffs' vague pleadings, rendering the probability of injury speculative. Without more concrete allegations, the Court cannot conclude that Plaintiffs are faced with any concrete and imminent injury sufficient to establish Article III standing. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

The Court will briefly address two arguments that Plaintiffs have raised on this issue. First, they argue that the issue of standing should be raised in a motion under Rule 12(b)(1), and that it is unfair and premature to resolve the issue at this time "considering the limited reply briefing

allowed." (Pls.' Reply, Dkt. 29, at 2). The Court, however, finds it appropriate to consider whether a lack of standing makes amendment futile and sees no efficiencies gained from further motion practice. *See Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("Courts may also consider judicial efficiency . . . before granting a motion to amend."). Additionally, Plaintiffs could have, but did not, seek leave to file their reply in excess of the applicable page limits to more adequately address the State's standing arguments. *See* Local Rule CV-7(f).

Second, it appears that Plaintiffs suggest, without pointing to any authority, that they need not establish an injury in fact because they are raising a facial challenge to the statutes. (*See* Pls.' Reply, Dkt. 29, at 2 ("Plaintiffs challenge the constitutionality of the Texas ballot access laws on their face . . . . Accordingly, Defendant's argument with regard to standing is irrelevant . . . ."). The Court disagrees. Standing is an "irreducible constitutional minimum" that must be established in each case. *Lujan*, 504 U.S. at 560. This is no less true in the context of a facial challenge. *See Carmouche*, 449 F.3d at 659–60 (examining whether an injury had been established in the context of a facial challenge). An exception allows standing to be found for plaintiffs challenging a regulation of speech as overbroad or vague even though their own speech may not fall within the regulation's scope. *See id.* This exception, however, is premised on a theory that such plaintiffs nonetheless face a concrete injury from the regulation's chilling effects. *See id.* It does not dispense with the requirement of demonstrating a concrete injury altogether. *See id.* Moreover, Plaintiffs have cited no case holding that this relaxed standing doctrine applies to challenges to ballot access laws, and the only authority this Court has found suggests the opposite. *See Storer*, 415 U.S. at 737 ("[I]f a candidate is absolutely and validly barred from the ballot by one provision of the laws, he cannot challenge other provisions as applied to other candidates.").

Having concluded that Plaintiffs' proposed amended complaint fails to establish that Plaintiffs have standing to pursue their 2020 claims, the Court finds that the proposed amendment is

futile and therefore denies Plaintiffs' Motion for Leave to File Plaintiffs' First Amended Complaint. (Dkt. 26).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Dismiss, (Dkt. 16), and **DENIES** Plaintiffs' Motion for Leave to File Plaintiffs' First Amended Complaint. (Dkt. 26).

**IT IS THEREFORE ORDERED** that Plaintiffs' claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on May 18, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE